**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **MARGARET MCGATHA,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 4:14-CV-281-RDP** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **Acting Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OF DECISION**

Plaintiff Margaret McGatha brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("the Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See also* 42 U.S.C. §§ 405(g), 1383(c). After reviewing the record and the parties' briefs, the court finds that the Commissioner's decision is due to be affirmed.

**I.      Proceedings Below**

On February 10, 2011, Plaintiff submitted DIB and SSI applications alleging disability beginning on January 28, 2011. (Tr. 123-24, 195-205, 232). The Social Security Administration initially denied Plaintiff's applications. (Tr. 128). Plaintiff requested and, on July 31, 2012, received a hearing (which was conducted by video) before Administrative Law Judge Joseph F. Dent (the "ALJ").[1] (Tr. 72, 93). In his decision, dated September 14, 2012, the ALJ determined that Plaintiff was not disabled under the Act from the alleged onset date, January 28, 2011, through the date of his decision. (Tr. 69, 85-86).

---

[1] Plaintiff appeared in Anniston, Alabama, while the ALJ presided over the hearing from Montgomery, Alabama. (Tr. 72, 93).

Plaintiff requested that the Appeals Council review the ALJ's decision and submitted two representative briefs dated December 2012 and November 2013 with additional evidence consisting of treatment records dated May 2007 through November 2013.[2] (Tr. 17-69, 300-477, 478-481, 816-820).

The Appeals Council considered Plaintiff's arguments and additional evidence, but determined that the evidence dated May 2007 through August 2012 did not provide a basis for changing the ALJ's decision, and that the evidence dated October 2012 through November 2013 did not affect the ALJ's decision because it did not pertain to the relevant period of alleged disability. (Tr. 2). On December 11, 2013, the Appeals Council denied Plaintiff's request, finding that that the ALJ applied the proper legal standards and his decision was supported by substantial evidence.  (Tr. 1-6). This denial rendered the ALJ's decision the final decision of the Commissioner, and therefore, a proper subject of this court's appellate review. *See* 20 C.F.R. §§ 404.981, 422.210(a).

## II.    Facts

At the time of Plaintiff's ALJ hearing, Plaintiff was 34-years-old and had a GED. (Tr. 84, 94-95, 232). Plaintiff has worked as a housekeeper, a newspaper deliverer, and as a fast-food worker. (Tr. 84, 111, 238, 243-245, 253-260). Plaintiff testified that she has a history of alcohol and drug abuse, but that she has been clean for two and a half years. (Tr. 77, 102).

In her applications, Plaintiff alleged disability due to anxiety, depression, bi-polar II disorder, and adjustment anxiety disorder. (Tr. 237). At the ALJ hearing, Plaintiff also alleged disability due to back and neck pain, the result of degenerative disk disease. (Tr. 97). Plaintiff

---

[2] Additionally, Plaintiff claims she submitted two additional documents for review by the Appeals Council, which she contends were "omitted from the record." (Pl.'s Br. at 23, 26). These "omitted" documents include a December 2012 Disability Questionnaire and Mental Health Source Statement from Dr. Teschner, Plaintiff's treating physician at Mercy Medical Center. *Id.* The Appeals Council did not identify these documents as evidence received, nor were the documents included anywhere in the administrative record. (Tr. 2, 18-68, 816-20).

testified that she had experienced non-debilitating back and neck pain for 14 years, but stated that after giving birth to her fourth child her pain "imploded." (Tr. 76, 97). Plaintiff testified that she is unable to receive prescription pain mediation because she has Medicaid coverage.  (Tr. 76, 98, 108-09).  Plaintiff further testified that her back and neck pain greatly affect her daily life and activities, noting that her pain has resulted in reduced concentration, reduced physical activity, limited meal preparation, and an inability to perform household chores. (Tr. 76-77, 99-101).

Plaintiff also testified that she suffers from panic attacks that she claims are uncontrolled by Lexapro. (Tr. 77, 102).  Plaintiff reported that in the two weeks before the ALJ hearing, she had two panic attacks, each lasting about 45 minutes. (Tr. 77, 102-03).  Plaintiff stated she is depressed, cries constantly, and has only one friend who is incarcerated. (Tr. 77, 103). At the time of the hearing, Plaintiff was receiving treatment from Calhoun Cleburne Mental Center. (Tr. 77, 110-11).

In her applications, Plaintiff stated that she stopped her newspaper delivery job because of her anxiety and bipolar disorder. (Tr. 77, 105).  She later testified that she stopped this job because she was unable to lift the 30 pound newspaper bundles, and she had problems with her boss, with whom she was sleeping with. (Tr. 77, 96, 105).  Plaintiff admits that she asked her boss to label her firing as "laid off" so that she would be eligible for benefits. (Tr. 77, 105-106). Plaintiff has not been employed since that time. (Tr. 95).

Centerstone Community Mental Center's medical records indicate Plaintiff was evaluated by Dr. Yeujeun Chen, a psychiatrist, in February 2010, and diagnosed as exhibiting Bipolar II Disorder, and alcohol abuse, with a GAF score of 51, indicating moderate symptoms. (Tr. 457, 620).  During her evaluation, Plaintiff expressed ongoing feelings of sadness, guilt, hopelessness, worthlessness, irritability, anger and paranoia, and complained of her lack of interest in daily

activities and problems with her concentration, appetite, and sleep. (*See* Tr. 484-501). Plaintiff reported that she was stressed because of her inability to find employment, and because she lived in a bad neighborhood. (Tr. 487). Giving a good prognosis for recovery, Dr. Chen approved Plaintiff for individual therapy and medication management. (Tr. 487). Plaintiff moved before beginning treatment and did not return.

On June 14, 2010, Robert Estock, M.D., a state agency psychiatric consultant, performed a psychiatric review and evaluated Plaintiff's mental RFC. (*See* Tr. 643-660). Dr. Estock found Plaintiff presented an affective disorder (Tr. 651), and a Substance Addiction Disorder (Tr. 643), but noted only mild to moderate functional limitations (Tr. 653). Dr. Estock opined that Plaintiff was, at most, only moderately limited. (Tr. 657-658).

In October 2010, Plaintiff began treatment at the Cherokee Etowah Dekalb Mental Health Center ("CED"). (Tr. 531). Plaintiff's initial assessments included diagnoses of bi-polar II disorder, generalized anxiety disorder, and posttraumatic stress disorder, and assigned a GAF score of 50, indicating serious symptoms. (Tr. 538). CED progress reports from February through April 2011, indicate that Plaintiff reported positive results from her medications, Seroquel and Lexapro. (Tr. 529-30, 786). In particular, CED reports from April 2011 note, that despite exhibiting a dysphoric mood and blunted affect, Plaintiff understood and was engaged in her treatment, and assigned her a GAF score of 55. (Tr. 786). Therapy notes from August 2011 indicate Plaintiff reported feeling stable without irritability, anger, or crying spells, and that her appetite and sleep were "ok". (Tr. 788-89).

Plaintiff moved in October 2012 and was referred to Calhoun-Cleburne Mental Health Facility. (Tr. 790). Plaintiff's CED discharge form indicates her status was improved, with a

GAF score of 55, despite her non-compliance problems with respect to mood, posttraumatic stress disorder, anxiety, and depression. (Tr. 790).

During her alleged period of disability, Plaintiff received mental and physical treatment from various institutions. In February 2011, Plaintiff visited the emergency room complaining of back pain. (Tr. 777). Exam records indicate that Plaintiff's behavior was normal, and that she exhibited bilateral paralumbar tenderness with palpable bilateral paralumbar spasms. (Tr. 780). Clinical impressions indicated chronic back pain and lumbar strain, Plaintiff was prescribed Tramadol, Flexeril, and Ibuprofen. (Tr. 778, 780).

On May 11, 2011 Dr. David Wilson, a psychologist, conducted a consultative psychological evaluation, which indicated DSM diagnoses of depression; history of alcohol dependence and drug abuse; history of sexual assaults; ongoing relationship problems; inadequate access to health care; and environmental stressors. (Tr. 503-509).  Dr. Wilson observed that although Plaintiff's mood was unstable, she was cooperative, gave good effort, and presented on-time with neat hygiene appearance. (Tr. 503-509). During Plaintiff's evaluation, she complained of a lack of energy and difficulty sleeping, but offered that she had a good appetite and did not get angry or irritable with her children. (Tr. 506-07). Assigning Plaintiff a GAF score of 52, Dr. Wilson opined that Plaintiff would have problems with the social aspect of employment, needed intensive therapy, and that she may need different medication. (Tr. 508). Dr. Wilson noted that, with proper medication, Plaintiff may be able to work. (Tr. 508).

On the Alabama Food Stamp Program Form completed by Dr. Marino Tulau on May 26, 2011, Dr. Tulau indicated that Plaintiff's bipolar disorder and generalized anxiety disorder rendered her unable to work. (Tr. 784).  Dr. Tulau wrote that Plaintiff's symptoms began in November 2010, and indicated that he believed her symptoms to be permanent. (Tr. 784).

In March 2012, Dr. Jeter, the staff psychiatrist for Calhoun-Cleburne Mental Health Board ("CCMB") approved Plaintiff's treatment plan, which included therapy, medical assessment and treatment, and medication monitoring and administration. (*See* Tr. 797). CCMB notes dated March 8, 2012 indicate that Plaintiff behaved appropriately, but was very agitated because she was angry with her mother. (Tr. 792). Plaintiff's GAF was estimated to be between 51 and 60 with moderate difficulty in functioning. (Tr. 792).  Plaintiff was scheduled for another visit to complete a Minnesota Multiphasic Personality Inventory and receive individual therapy. (Tr. 792).

On March 21, 2012, Plaintiff saw Dr. Paul Muratta, a pain management specialist, for evaluation of her neck and back pain. (Tr. 802). During evaluation, Plaintiff indicated that her back pain began 13 years before, but that her pain had worsened after giving birth to her youngest child. (Tr. 802). Dr. Muratta indicated that the flexion of Plaintiff's lower lumbar spine decreased Plaintiff's pain, but that her pain increased with extension. (Tr. 802).  Plaintiff did not indicate cervical spine range-of-motion pain, her straight leg raise was negative bilaterally, and no edema was noted. Dr. Muratta's assessment was that Plaintiff suffered from low back pain, cervicalgia, and neuralgia, and ordered an MRI. (Tr. 802, 803-805). Plaintiff's MRI scan, reviewed on March 30, 2012 by Dr. Homer Spencer, showed a small central subligamental herniation at the C2 interspace and mild broad-based bulging of the C3 vertebrae (Tr. 805), as well as, broad-based bulging of the L4 intervertebral disc with at least mild to moderate spinal canal and bilateral lateral recess stenosis and a broad-based subligamental herniation at the L5 level. (Tr. 804). Dr. Spencer opined that while much of the examinations were unremarkable, Plaintiff's lumbar scan indicated marked degenerative disc disease at L5. (Tr. 804). Plaintiff

returned to Dr. Muratta's office in April 2012 with complaints of sharp neck and back pain (Tr. 800-01), and received an epidural steroid injection on May 3, 2012.

On May 12, 2012, Dr. Jeter evaluated Plaintiff's mental health. (*See* Tr. 811-813). Dr. Jeter predicted Plaintiff would do well. (Tr. 813) Dr. Jeter found mostly mild limitations in Plaintiff's relevant functioning, indicating only three areas of moderate impairment. (*See* Tr. 811-813).  These areas of moderate impairments involve Plaintiff's persistence, and her ability to respond to the changes and pressures within a work environment. (*See* Tr. 812-13).

In addition to the medical expert's evaluations, Plaintiff's mother submitted a Third Party Function Report. Plaintiff's mother provided detailed knowledge of Plaintiff's situation, and confirmed Plaintiff is mostly independent in activities of daily living. (*See* 272-279). At Plaintiff's hearing, Ms. Clemmons, an impartial vocational expert, testified that a hypothetical individual, who was similarly situated to Plaintiff in RFC and vocational profile, could not perform Plaintiff's past relevant work, but that jobs exist in significant numbers within the national economy that a person such as Plaintiff can perform.  (Tr. 112-15).

## III.    The ALJ's Decision

To qualify for disability benefits under the Act, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The ALJ must apply a five step analysis when determining disability under the Act.  *See* 20 C.F.R. §§

404.1520 (a)-(g), 416.920 (a)-(g); *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

In the first step, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that requires significant physical or mental activities. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit." § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. In the second step, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limit the claimant's ability to perform basic work activities. §404.1520(a)(4)(ii). Absent such impairment or combination thereof, the claimant may not claim disability. *Id.* In the third step, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in the federal regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the Listing requirements are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the disability requirements of the third step are not satisfied, the ALJ may still find disability under the next two steps of the analysis. However, before proceeding to the fourth step the ALJ must first determine the claimant's residual functional capacity ("RFC") or the claimant's ability to work in spite of the claimant's impairments. § 404.1520(e). In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. § 404.1520(a)(4)(iv). If the ALJ finds that the claimant is capable of performing past relevant work, then the claimant cannot be declared disabled under the Act; but, if the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth, and final, step of analysis. § 404.1520(a)(4)(v). The fifth step of analysis requires the ALJ to determine

whether the claimant is able to perform any work, present in the national economy commensurate with the claimant's RFC, age, education, and work experience. *See* §§ 404.1512(g), 404.1520(g), 404.1560(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs within the national economy that the claimant can do given her RFC, age, education, and work experience. *See* §§ 404.1520(g), 404.1520(c); *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the present case, the ALJ considered the entire record, as it existed at that time, and found that Plaintiff met the insured status requirements of the Act through December 31, 2013; and that Plaintiff had not engaged in substantial gainful activity after the alleged disability onset. (Tr. 74). The ALJ found that Plaintiff has severe, medically-determinable impairments of depression, bi-polar disorder, history of alcohol dependence, history of marijuana use, history of cocaine abuse, and degenerative disk disease of the lumbar and cervical spine. (*See* Tr. 74). However, the ALJ determined that Plaintiff's impairments, singly and in combination, neither met nor equaled Listing 1.04, Listing 12.04 or Listing 12.06, as defined under the Listings of Impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 74-75). In making this decision, the ALJ took into consideration the credible, objective medical evidence contained in the record, and Plaintiff's subjective symptomology. (Tr. 75).  The ALJ considered Listing 1.04's criteria, and found that the severity of Plaintiff's impairments, singly and in combination, do not establish that she suffered from spinal disease that compromises a nerve root or the spinal cord. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 75). Next, the ALJ considered the "Paragraph B" criteria of Listings 12.04 and 12.06, which require the mental impairments to result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or

repeated episodes of decompensation of extended duration. *See Id.* (Tr. 75). The ALJ determined that the "Paragraph B" criteria of Listings 12.04 and 12.06 were not satisfied, because Plaintiff had no more than moderate difficulties in the above categories, and no episodes of decompensation. (Tr. 75). For many of the same reasons, the ALJ found that Plaintiff failed to present evidence establishing the presence of "Paragraph C" criteria. *See Id.* (Tr. 75)

The ALJ completed an RFC assessment before proceeding to the fourth step of his analysis. (Tr. 76-84). In doing so, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not wholly credible. (Tr. 82). The ALJ noted that medical evidence of record supports Plaintiff's allegations of depression and bi-polar disorder, but does not support the extent of her alleged functional limitations. (Tr. 83). The ALJ pointed to several inconsistencies within Plaintiff's testimony regarding her alleged back pain (*See* Tr. 83, 104), and her request to falsify employment records for the purpose of benefit eligibility. (*See* Tr. 83, 105). The ALJ further reasoned that Plaintiff's testimony regarding her activities does not support a finding of complete disability. (Tr. 83; *see* 99-101).

The ALJ assigned great weight to the findings and opinions of Dr. Jeter, Plaintiff's treating psychiatrist, who (1) found only mild to moderate symptoms, and (2) predicted that Plaintiff would do well. (Tr. 83; *see* 810-813). The ALJ also gave significant weight to both treatment notes from CED Mental Health Center ("CED") (Tr. 83, 788), and the Third Party Function Report submitted by Plaintiff's mother (Tr. 83; *see* Tr. 272-279). These records indicated Plaintiff was neither credible nor severely disabled. (Tr. 83-84). Conversely, the ALJ gave little weight to Dr. Tulau's opinions in Plaintiff's Food Stamp "Work Requirements" (Tr.

784).  The ALJ found that Dr. Tulau's opinions are conclusory, when offered for the purpose of determining disability.  He also concluded (with emphasis) that Dr. Tulau's opinion is contrary to more recent psychological assessments within the medical record of evidence. (Tr. 84; *see* 785-98, 810-13).

For these reasons, the ALJ determined, that notwithstanding her impairments, the objective evidence on record showed that Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that [Plaintiff] must have a sit/stand option allowing this individual to alternate between sitting and standing positions at 30 to 60 minute intervals throughout the workday. She can frequently perform bilateral pushing and/or pulling movements and foot control operations. She can never climb ramps, stairs, ladders, ropes or scaffolds. She can never crawl but can occasionally balance, stoop, kneel, and crouch. She can frequently use her bilateral hands for holding and fingering. She is to avoid concentrated exposure to extreme temperatures, wetness, humidity, excessive noise and excessive vibrations. She is to avoid all exposure to hazardous machinery and unprotected heights. [Plaintiff] is limited to simple, repetitive routine tasks with one to three steps in a low stress job defined as having only occasional decision making, changes in the work setting and interaction with co-workers while having no interaction with the public.

(Tr. 76).

At the fourth step, the ALJ determined that Plaintiff's RFC prevents her from performing any of her past relevant work as a fast food worker, housekeeper, and newspaper deliverer. (Tr. 84). The ALJ relied on the Vocational Expert's testimony, who testified that Plaintiff is unable to return to any of her past relevant work within Plaintiff's RFC, as stated above. (Tr. 84, 112).

Proceeding to the fifth and final step, the ALJ considered Plaintiff's age, education, work experience, and RFC, and found that there are jobs that exist in significant numbers in the national economy that she is able to perform. (Tr. 84-85). The ALJ relied on the Vocational Expert's testimony that unskilled, sedentary jobs exist in significant numbers within the state and national economies that a hypothetical individual, similarly situated to Plaintiff in all relevant

aspects, would be able to perform. (Tr. 85, 112-115). Specifically these jobs include a small products inspector, a weight tester, or a sorter. (Tr. 112-115).  Therefore, the ALJ ruled that Plaintiff is not disabled and is not entitled to benefits from the alleged onset of disability through the date of his decision. (Tr. 72, 85-86).

## IV.    Plaintiff's Argument for Reversal or Remand

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Mem. 1, 13-39). Plaintiff presents several arguments: (1) the ALJ erred in finding that Plaintiff did not meet the requirements of Listing 12.04; (2) the ALJ's decision was not based on substantial evidence, particularly when the evidence submitted to the Appeals Council is considered; (3) the Appeals Council failed to remand and failed to articulate an adequate rationale; (4) the ALJ failed to give substantial weight to the treating physical without articulating good cause for doing so; and (5) the ALJ failed to state adequate reasons for finding the claimant not credible. (*See* Pl.'s Mem. 1-2).  The court addresses each of these arguments below.

## V.    Standard of Review

Judicial review of disability claims under the Act is limited to questions as to whether the Commissioner's decision is supported by substantial evidence, and questions as to whether the correct legal standards were applied. 42 U.S.C. §405(g); *Wilson v. Barnhart*, 284 F. 3d 1219, 1221 (11th Cir. 2002).

The Act mandates that when supported by "substantial evidence" the Commissioner's findings of fact are conclusive. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). The court may not reconsider the facts, reevaluate the evidence, nor may the court substitute its

judgment for that of the Commissioner. *See id.* ((citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)). Instead, the court must review the final decision as a whole, and determine whether  the decision is "reasonable and supported by substantial evidence." *Id.* Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings, even if the evidence preponderates against the Commissioner's findings. *See id.* While the court acknowledges the limited scope of judicial review with respect to the Commissioner's factual findings, the court notes that the review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Unlike questions as to the factual findings, questions of legal standards are to be reviewed by the district court *de novo. Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In accordance with the Act, the issues before this court consider only whether the record contains substantial evidence to sustain the ALJ's decision, and whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982).

## VI.   Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand or reversal. For the reasons outline below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.    Plaintiff Does Not Meet the Requirements Under Listing 12.04

Plaintiff alleges that her impairments met or equaled Listing 12.04, for affective

disorders.[3] (Pl.'s Mem. 16-22); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The court disagrees. Plaintiff has not pointed to any specific evidence to support this conclusion; rather, she has attempted to submit, in wholesale fashion, several summaries of her medical records through her brief. (Pl. Mem. 16-22). Plaintiff bears the burden of showing that her impairments meet or equal a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir.1991). Additionally, the regulations provide that Plaintiff bears the burden of production, in that she "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about her medical impairment(s)." 20 C.F.R. § 404.912(a). Although Plaintiff was diagnosed with an affective disorder (bipolar II disorder), this diagnosis alone is insufficient to satisfy the criteria of a listed impairment. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." (citing 20 C.F.R. §§ 404.1525, 416.925, 404.1526, and 416.926)). A complete review of the record makes clear that Plaintiff has failed to meet or equal all the requirements of Listing 12.04.

Alternatively, substantial evidence supports the ALJ's determination that Plaintiff does not meet Listing 12.04. Step three requires the ALJ to determine whether a claimant's impairment meets or equals a "Listing." *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (providing that a claimant may establish disability if she proves her impairments meet or equal a Listing). To "meet" a Listing, a claimant must have a diagnosis included in the listings and provide medical documentation of symptoms rising to the severity required in by the Listing. *See Wilson v. Barnhart*, 284 F.2d

---

[3] Although Plaintiff does not expressly identify under which subsection she intends to proceed, her argument focuses solely on 12.04(B). To the extent Plaintiff intended to argue error under 12.04(C) her argument is waived. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

1219, 1221 (11th Cir. 2002). To "equal" a Listing, the medical findings must be at least equal in severity and duration to the listed findings. *Id.* at 1224. A claimant cannot qualify under an "equivalence" theory by showing that the overall impact of her unlisted impairment, or combination of impairments, is as severe as that of a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

To satisfy Listing 12.04(B), a claimant must be disabled by way of an affective disorder, resulting in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *See* Listing 12.04(B). A "marked" limitation is "more than moderate but less than extreme." Listing 12.00(C). When a claimant alleges multiple impairments, which do not individually meet or equal a Listing, the Commissioner reviews the relevant medical evidence to determine whether the combination is medically equal to any listed impairment. *Wilson*, 284 F.3d at 1224. To satisfy Listing 12.04, a claimant's impairment, or combination thereof,  must "meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530 (emphasis in original). An impairment manifesting only some of those criteria, no matter how severely, does not qualify. *Id. See* 20 C.F.R. § 404.1525.

Substantial evidence supports the ALJ's conclusion that Plaintiff failed to meet her burden of proving that her impairments met or equaled listing 12.04. First, the ALJ gave great weight to the opinions of Plaintiff's treating psychiatrist. Dr. Jeter's evaluations of Plaintiff during the relevant period found that Plaintiff did not have a serious mental impairment. (Tr. 82, 810-13). Dr. Jeter found only mild to moderate, not marked, limitations and restrictions in the relevant categories under Listing 12.04. (Tr. 810-13). Dr. Jeter further found that Plaintiff had

suffered no episodes of decompensation.[4] (Tr. 813). Plaintiff has not presented substantial evidence from the relevant time period that contradicts Dr. Jeter's evaluation.

Specifically, with respect to her activities of daily living, the ALJ found Plaintiff had only mild restrictions. (*See* Tr. 83). The ALJ noted that Plaintiff reported that she is the primary homemaker for a family of five, comprised of three school aged children and an infant, and that she is able to care for her young children without assistance. (Tr. 83; *see* Tr. 99-101). Plaintiff's testimony further supports that she is able to cook, do laundry, and transport her children. (*See* Tr. 99-10). Plaintiff's mother provided a third-party report to the ALJ which largely confirmed that Plaintiff is independent in her activities of daily living. (*See* Tr. 272-79). Although Plaintiff's mother, Christy McGatha, indicated that Plaintiff suffered from some limitations, Ms. McGatha suggested Plaintiff is able to cook, clean, shop, drive, read, talk on the phone, and walk approximately five blocks. (Tr. 274). With regard to Plaintiff's social functioning, the ALJ found that Plaintiff only had moderate difficulties. (Tr. 83). The ALJ recognized that Plaintiff's mother indicated that Plaintiff is often very hurtful verbally, and that Plaintiff cannot control herself when she gets angry (Tr. 79, 277); however, the ALJ found that Plaintiff's statements on her function report, which indicate she does not get angry with her children, strongly suggest that Plaintiff has the ability to control her behavior when she chooses to do so. (Tr. 83; *see* 261-268). With regard to concentration, persistence, or pace, the ALJ found that Plaintiff only had moderate difficulties. Dr. Jeter's evaluation indicated that Plaintiff had a moderate limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual; and that Plaintiff had only a mild degree of impairment in her comprehension, memory, and concentration. (Tr. 812, 82). Finally, and again, Plaintiff has provided no evidence of

---

[4] Dr. Jeter concluded that Plaintiff's impairments had not lasted nor were they expected to last twelve months or longer at the level of severity indicated. (*See* Tr. 82, 813).

decompensation. Based on this and other substantial evidence, the ALJ concluded that the requirements of Listing 12.04 were not satisfied. (Tr. 74-75).

The record amply demonstrates that the ALJ's decision is based on substantial evidence and he applied the correct legal standards. Accordingly, the court finds the ALJ's decision that Plaintiff's impairments, considered both singly and in combination, did not meet or equal Listing 12.04 is due to be affirmed.

**B.     The ALJ's Decision Is Supported By Substantial Evidence When the Evidence Submitted to the Appeals Council Is Considered**

Plaintiff also alleges that that the ALJ's decision is not supported by substantial evidence when the evidence she submitted to the Appeals Council is considered.[5] (Pl.'s Mem. 23-27). But this assertion misses the mark for at least two reasons. First, Plaintiff's entire argument on this issue is that evidence allegedly submitted to the Appeals Council for review, and evidence considered by the Appeals Council, is relevant and "very important." Beyond summarizing the evidence, Plaintiff has not explained how the evidence undermines the ALJ's decision. In other words, Plaintiff has "simply stat[ed] that an issues exists, without further argument or discussion," which "constitutes abandonment of that issue and precludes … considering the issue on appeal." *Singh*, 561 F.3d at 1278.

Second, and alternatively, the evidence made part of the record by the Appeals Council[6] does not render the denial of benefits erroneous. As a threshold matter, the court notes that most of the treatment notes provided to the Appeals Council for review do not undermine the ALJ's

---

[5] As discussed below, *infra* Part VI.F., the court may only consider the evidence not made part of the record by the Appeals Council to determine whether a remand under sentence six is warranted.

[6] When a claimant "properly presents new evidence to the [Appeals Council] and it denies review, [a reviewing court] essentially consider[s] the claimant's evidence anew to determine whether 'that new evidence renders the denial of benefits erroneous.'" *Levie*, 514 F. App'x. at 832 (quoting *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This court must consider the record as a whole, which includes the evidence made part of the record by the Appeals Council, in order to determine whether the ALJ's findings are supported by substantial evidence. *Ingram*, 496 F.3d at 1266

decision because these notes were contained in the record considered by the ALJ. (Tr. 300-477 *Cf.* 539-592, 661-775). The remaining evidence shows that on August 21, 2012, Plaintiff, in a scheduled follow-up with Dr. Teschner, complained of acid reflux and requested pain medication. These treatment records review and summarize the findings from the MRI taken on March 30, 2012 (Tr. 816-18).  Plaintiff admitted using her mother's pain patches after testing positive for opiates. (Tr. 816-18). During evaluation, Plaintiff referenced an alleged back trauma occurring 13 years prior, claimed that her pain has worsened after the birth of her fourth child, and reported she is receiving treatment from Dr. Muratta, a pain management specialist. (Tr. 816). Although the ALJ was unable to consider Plaintiff's medical records dated August 21, 2012, the ALJ had sufficient information regarding Plaintiff's back problems and her history of drug abuse. As the ALJ discussed in his opinion, he reviewed medical records from Dr. Muratta, as well as Plaintiff's MRI results dated March 30, 2012. Notably, the only information within these medical reports of which the ALJ was not aware is Plaintiff's urine analysis that tested positive for opiates. (Tr. 816). However, this new information does not undermine the ALJ's credibility findings.  To the contrary, it supports them.  The ALJ permissibly found Plaintiff provided inconsistent testimony that she had been clean for two and a half years. (Tr. 102). Therefore, the court finds the evidence considered by the Appeals Council did not render the ALJ's denial of benefits erroneous, and did not undermine his fact findings.  That is, even if the new evidence were considered, the ALJ's findings are still supported by substantial evidence. Accordingly, the Appeals Council did not err in declining to review Plaintiff's claim.

### C.  The Appeals Council Properly Considered Plaintiff's Additional Evidence

Plaintiff also asserts that the Appeals Council failed to consider the medical records of Dr. Teschner (the "new evidence"). (Pl.'s Mem. 27-35). Plaintiff argues that the new evidence

should have resulted in remand to the ALJ for further consideration. (Pl.'s Mem. 27-28). Specifically at issue is whether the Appeals Council adequately articulated its evaluation of new evidence, and whether the Appeals Council properly found this new evidence did not warrant a remand to the ALJ for further consideration.

Typically, when a claimant properly presents new evidence to the Appeals Council, the reviewing court must consider whether the new evidence renders the denial of benefits erroneous. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). New evidence must be reviewed only if it is material and relates to the period on or before the date of the ALJ's hearing decision. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); 20 C.F.R. § 404.970(b). If the Appeals Council determines that the evidence does not render the denial erroneous, the Appeals Council must show in its written denial that it has adequately evaluated the evidence. *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011). For the reasons outlined below, the court concludes that the Appeals Council's written denial reflects that it adequately evaluated Plaintiff's new evidence and properly determined that the new evidence was immaterial, as it does not relate to the relevant time period.

The threshold issue here is whether the Appeals Council showed in its written denial that it adequately evaluated Plaintiff's newly submitted evidence.  If the Appeals Council merely "perfunctorily adheres" to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence and the decision must be remanded for a determination based on the whole record. *Flowers.*, 441 F. App'x at 745 (11th Cir. 2001). However, as the Eleventh Circuit has explained, "because a reviewing court must evaluate the claimant's evidence anew, the [Appeals Council] is not required to provide a thorough explanation when denying review." *Burgin v.*

*Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (noting that the Appeals Council had considered and incorporated the new evidence into the record and therefore was not required to explain its denial).

Applying *Flowers* and *Burgin*, this court concludes that the Appeals Council's discussion sufficiently demonstrates that it adequately considered Dr. Teschner's reports from Mercy Medical Center dated October 1, 2012 through November 12, 2013. (Tr. 2). Stated another way, the Appeals Council did not perfunctorily adhere to the ALJ's decision. The Appeals Council stated it had:

> looked at the medical records from Mercy, Riverview, and Gadsden Medical Centers from October 1, 2012 to November 12, 2013. The [ALJ] decided [Plaintiff's] case through September 14, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether [Plaintiff was] disabled beginning on or before September 14, 2012.

(Tr. 2). Although brief, the Appeals Council provided more than a perfunctory adherence to the ALJ's decision. Therefore, this court concludes that the Appeals Council provided more than a merely perfunctory adherence to the ALJ's decision.

Two issues remain with respect to Plaintiff's new evidence argument: relevancy and materiality. New evidence is relevant if it relates to the period on or before the date of the ALJ's hearing. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); 20 C.F.R. § 404.970(b).  New evidence is material if there is a "reasonable possibility" that it would change the administrative outcome." *Flowers*, 441 F. App'x at 745 (quoting *Hyde v. Bowen*,  823 F.2d 456, 459 (11th Cir. 1987)).  If new evidence does not relate to the relevant time period, then it is not material.

As demonstrated here, this is the basis upon which the Appeals Council decided not to consider Dr. Teschner's notes from October 1, 2012 through November 12, 2013. (*See* Tr. 2).

While Dr. Teschner is Plaintiff's treating physician, a treating physician's respective opinion may be rejected if it is conclusory or inconsistent with other evidence on the record. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir 1986). The court concludes that there is simply not a reasonable possibility that Dr. Teschner's reports would have altered the ALJ's outcome, because those reports are neither relevant nor otherwise material.

Dr. Teschner's notes are irrelevant because they do not relate to, nor reflect on, Plaintiff's period of disability. *Keeton*, 21 F.3d at 1066; 20 C.F.R. § 404.970(b). The dates of Dr. Teschner's evaluations range from only one month to over a year *after* the decision of the ALJ. (Tr. 72). Further,  Dr. Teschner's notes do not expressly state that the content therein actually pertains to the relevant period.  Rather, Dr. Teschner included language indicating that the notes apply to Plaintiff's  "present illness." *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 823-33 (discrediting subsequent diagnoses that do not expressly state they apply to the disability period when the diagnoses conflict with evidence of record). Finally, much of the new evidence is irrelevant to the state of Plaintiff's mental impairments during the relevant time frame, because Dr. Teschner's assessments are premised on entirely changed circumstances with respect to Plaintiff's living conditions and stressors. (*See* Tr. 33, 59-63). The circumstances surrounding Plaintiff's later complaints of mental and emotional related impairments substantially differ from her circumstances at the time of the ALJ's decision. In November 2013, after being released from a four a month prison sentence, and while under the additional stress of seeking custody of her children from DHR, Plaintiff complained of increased anxiety, disturbing thoughts, depression, and psychiatric disorders.  (*See* Tr. 59-63).  Taken together, these facts suggest that the probative value of the new evidence, if any, is slight and does not render the denial of

benefits erroneous. *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011); *Wright v. Colvin*, 2015 WL 526806 at *9 (N.D. Ala. Feb. 9, 2015).

Dr. Teschner's notes from October 2012 through November 2013 are also immaterial, because the evidence therein does not create a "reasonable possibility" that the ALJ's decisions would be affected.  *See Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (finding new evidence is material and warrants remand if "there is a reasonable possibility that the new evidence would change the administrative outcome."). At best, Dr. Teschner's notes show only that Plaintiff continued to complain of back pain after the relevant disability time frame. (Tr. 18, 31, 33, 40, 45, 51, 60). However, Plaintiff's summaries, quotations, and mass transcriptions of uncontextualized case law, fail to develop any arguments regarding her physical conditions, thus waiving any issue with the ALJ's factual findings in that regard. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006)(noting claimant waived issue when she neither elaborated on, nor provided citation to authority regarding claim); *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998). Dr. Teschner's treatment notes do not support greater mental limitations than the ALJ found in his RFC assessment.[7] (*See* Tr. 59-63). Although Plaintiff reported feeling anxious in her October 2012 follow-up (Tr. 18), Dr. Teschner made no psychiatric exam findings. (Tr. 19, 29). In November and December 2012 and March 2013, Plaintiff denied having psychiatric problems (Tr. 33, 45, 51), and Dr. Teschner's findings corroborate this denial. (Tr. 34, 41, 46, 49, 52). In July 2013, Dr. Teschner's thorough psychiatric exam obtained entirely normal findings.  (Tr. 56).  And in November 2013, Dr. Teschner found Plaintiff was oriented to time, place, and person, exhibiting appropriate affect

---

[7] The majority of Dr. Teschner's diagnoses made from October 2012 through November 2013 are unrelated to Plaintiff's alleged disabling impairments. Although the court acknowledges that in October 2012 and November 2013, Plaintiff reported experiencing some mental impairment. (*See* Tr. 54-63). Dr. Teschner's records indicate Plaintiff's chief complaints are largely unrelated to her alleged disabling impairments. (*See* Tr. 18-63).

and neutral mood (Tr. 62), noting that Plaintiff was "doing much better," and no longer "drug seeking" which Dr. Teschner stated was a "[a] huge change." (Tr. 63).

To the extent that the new evidence could be said to relate to a relevant time period at all,[8] the evidence was immaterial and entitled so little weight it was appropriately disregarded by the Appeals Council. Therefore, the Appeals Council's consideration of the new evidence due to be affirmed.

### D.      The ALJ Afforded Proper Weight to the Opinion of Dr. Marino Tulau

Plaintiff next argues that the ALJ improperly rejected psychiatrist Marino Tulau, M.D.'s, opinion on an Alabama Food Stamp Program "Work Requirements" form. (Pl.'s Mem. 35-39). On the form, completed May 26, 2011, Dr. Tulau opined that Plaintiff was permanently disabled due to her mental impairments. (Tr. 783-84). Plaintiff's argument is without merit.

As a non-treating source, Dr. Tulau's opinions are not entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2). When determining how much weight to afford Dr. Tulau's opinion, the ALJ was called upon to consider whether: Dr. Tulau treated Plaintiff; there is evidence to support his opinion; his opinion is consistent with the record as a whole; and his specialization. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Further, the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). Even the opinion of a treating physician (which would be entitled to more deference than those of a non-treating physician) may be rejected if the ALJ has "good cause."[9] *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Here, Dr.

---

[8] To be clear, some of the medical records and evidence that Dr. Teschner relied on were before the ALJ at the time of his decision. (*See generally* Tr. 81-83).

[9] An ALJ may discount a physician's opinion -- even a treating physician's opinion -- when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is

Tulau was not a treating physician and his opinion does not warrant any special deference or consideration. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.927(c)(2); *Donomme v. Comm'r. Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

Additionally, substantial evidence supports the ALJ's finding that Dr. Tulau's opinion was inconsistent with other objective medical evidence. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford*, 363 F.3d at 1159-60. (Tr. 84). The ALJ discussed in detail the inconsistencies between Dr. Tulau's findings and those of Plaintiff's treating physicians. (Tr. 81, 83, *see* Tr. 783-84). For example, the ALJ noted that in May 2012, Dr. Jeter, Plaintiff's treating psychiatrist, found Plaintiff's psychological symptoms to be mostly mild and that her impairments have not lasted nor were expected to last for twelve months or longer at the level of severity indicated." (Tr. 82, 813). The May 2011 medical records from Dr. Wilson, Plaintiff's consultative psychologist, also contradict Dr. Tulau's opinion. (Tr. 508). Dr. Wilson noted that Plaintiff appeared on time with neat hygiene and appearance, and assessed Plaintiff as having a GAF of 52, indicating moderate symptoms. (Tr. 81, 508). *See* DSM-IV-TR, 32-34; *Gilabert v. Comm'r of Soc. Sec.*, 396 F. App'x 652, 654-655 (11th Cir. 2010) (holding treating physician's opinion of severe mental limitations conflicted with his assignment of GAF scores in 50s and 60s); *see e.g., Bloodworth*, 703 F.2d at 1240 (physician's opinion may be rejected "when the evidence supports a contrary conclusion."). Further, the ALJ was not obligated to accept Dr. Tulau's opinion that Plaintiff was disabled. Although acceptable medical source opinions contribute to the ALJ's decision, the "final responsibility for deciding [whether a claimant is

---

inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

disabled] is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(d), 416.927(d); *see* Social Security Ruling (SSR) 96-5p, 1996 WL 374183 (S.S.A.), at *2.

Based on the record before the court, it is evident that the ALJ considered the factors set forth in the regulations and articulated good cause for giving Dr. Tulau's opinions little weight. Therefore, the ALJ did not err by assigning little weight to Dr. Tulau's opinions.

### E.   The ALJ Stated Adequate Reasons for His Finding that Plaintiff was Not Credible

Plaintiff alleges that the ALJ failed to state adequate reasons for finding she was not credible. (Pl.'s Mem. 1, 39). When claiming disability, a claimant must produce evidence of an underlying medical condition, and either objective medical evidence confirming the severity of the alleged symptoms, or evidence indicating that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* C.F.R. § 404.1529; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 1991). If the objective medical evidence does not confirm the severity of the alleged symptoms, but the claimant's impairment could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms, and their effect on her ability to work. *See* 20 C.F.R. § 404.1529; *Wilson*, 284 F.3d at 1225-26. Here, while the ALJ indicated that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [Plaintiff's] residual functional capacity assessment." (Tr. 82).

An ALJ is not required to accept a claimant's complaints of pain, merely because the claimant successfully established that her impairment could reasonably be expected to produce her alleged symptoms. *See Foote v. Charter*, 67 F.3d 1553, 1560-61 (11th Cir. 1995). The

reasons given for discrediting pain testimony must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 832, 839 (11th Cir. 1992). This requires an "explicit articulation of the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005). Further, a reviewing court will not disturb a clearly articulated credibility finding supported by substantial evidence of record. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

Here, the ALJ's decision demonstrates that he correctly applied these standards and clearly articulated numerous reasons for discrediting Plaintiff's subjective pain and impairment testimony. (*See* Tr. 82-84). The ALJ noted that many inconsistencies existed between Plaintiff's testimony and the medical evidence. (Tr. 82). Plaintiff testified that she continued to receive, allegedly ineffective, epidural shots, though medical records indicate she received only one steroid injection. (Tr. 82, 800). The ALJ considered the imaging studies performed by Dr. Muratta, the pain management specialist. Contrary to Plaintiff's pain testimony, the ALJ found that studies were generally unremarkable, with the exception of a small-central subligmental herniation at C2 and a mild broad-based bulging of the C3 intervertebral disc. (Tr. 82, 805). The ALJ questioned Plaintiff's failure to allege physical impairments in her SSI and DIB applications. (Tr. 83, 104-105, 237). Plaintiff testified her back pain began 14 years prior, but that the birth of her fourth child had increased its severity. (Tr. 104-105). The ALJ expressed skepticism that after experiencing back pain for such a long time, Plaintiff would omit back pain as a medical impairment on her disability applications. (Tr. 83, 104-05, 237). Furthermore, the ALJ's skepticism is understandable "in light of her testimony concerning why she quit her last job as a paper deliverer," (Tr. 83, 96, 105) noting that "[a]t one point, she testified she stopped work because she could not lift the newspaper bundles, while at another time, she stated she was

26

fired by the boss, but talked him into labeling it as "laid off" so she could get benefits." (Tr. 83, *see* Tr. 96, 103, 105-06).

Plaintiff counters that her ability to participate in daily activities of short duration is not dispositive. (Pl.'s Mem. 41-42). She is, of course, correct.  A claimant need not be bedridden or unable to perform any household chores to be disabled. *See Bennett v. Barnhart*, 288 F.Supp.2d 1246, 1252 (N.D. Ala. 2003). However, here Plaintiff's argument falls short, because, the ALJ's decision was not based solely on Plaintiff's ability to perform daily activities. (*See* Tr. 82-84).

Therefore, the court concludes that because the ALJ considered the entire record when assessing Plaintiff's credibility, the ALJ's reasons given for discrediting her pain testimony are based on substantial evidence, and is due to be affirmed.

### F.      Remand Is Not Warranted Under Sentence Six of 42 U.S.C. § 405(g)

Finally, Plaintiff alleges she submitted a December 2012 Disability Questionnaire and Mental Health Source Statement from Dr. Teschner, for review by the Appeals Council. (Pl.'s Mem. at 23, 26). However, these documents do not appear in the administrative transcript and the Appeals Council did not provide any indication that these documents were received. (Tr. 2, 6, 18-68, 816-20). The only reference to these documents within the administrative transcript is in Plaintiff's December 2012 Representative Brief, in which Plaintiff summarizes Dr. Teschner's alleged opinions and asserts that she is submitting both documents as attachments to her brief. (Tr. 301-02). Plaintiff submitted this brief to the Appeals Council with 152-pages of attached exhibits, but, both the questionnaire and statement from Dr. Teschner are noticeably absent.[10] (Tr. 325-477).  Plaintiff alleges numerous times that these opinions were "omitted from record",

---

[10] The 152-pages of exhibits attached to Plaintiff's December 2012 Representative Brief include only resubmissions of evidence that was in the record before the ALJ.

but has not provided any evidence that the Commissioner ever received them. (*See* Pl.'s Br. at 26).

To the extent Plaintiff seeks remand of her case for the consideration of Dr. Teschner's alleged December 2010 opinions under sentence six of 42 U.S.C. § 405(g), without providing this evidence to this court, Plaintiff's request for remand is due to be denied. Under sentence six of 42 U.S.C. § 405(g), remand is warranted when a claimant establishes that there exists new, noncumulative evidence for the Commissioner to consider. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). The mere allegation that new and material evidence exists does not satisfy Section 405(g).[11] Therefore, the court finds that under sentence six of 42 U.S.C § 405(g), remand for the consideration of Dr. Teschner's alleged December 2012 opinions is not warranted.

## VII.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that proper legal standards were applied in reaching this determination.   The Commissioner's final decision is, therefore, due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 6, 2015.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[11] In *Allen v. Commissioner of Social Security*, the 6th Circuit found that the clear language of § 405(g) required a "*showing that there is new evidence*", and contradicted the claimant's request for remand based on the "*possibility* of new and material evidence." 561 F.3d 646, 653 (6th Cir. 2009) (citing 42 U.S.C. § 405(g)) (emphasis in original).